**Matthew C. Lackey**, Oregon State Bar No. 06404
Matthew C. Lackey, Attorney at Law, P.C.
mlackey@portlandcivillaw.com
610 SW Broadway, Suite 510
Portland, Oregon 97205
Telephone: (503) 972-2183
Facsimile: (503) 972-1679

    Of Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON-PORTLAND DIVISION

| | |
|---|---|
| ROCHELLE SURBER | Case No. 10-CV-341-HA |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| v. | Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.); Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.); Unlawful Debt Collection Practices Act (ORS 646.639 et seq.) Defamation; Invasion of Privacy |
| CASCADE RADIOLOGISTS, LTD., an Oregon Corporation; and CAC SERVICES, INC., dba COMMERCIAL ADJUSTMENT COMPANY, an Oregon Corporation; ST. FRANCIS OF BAKER CITY, an Oregon Non-Profit Corporation; ST. ELIZABETH HEALTH SERVICE, INC., an Oregon Non-Profit Corporation; CDI AFFILIATED SERVICES, INC., an Idaho Corporation; PROVIDENCE HEALTH & SERVICES dba PROVIDENCE ST. MARY MEDICAL CENTER, a Washington Non-profit Corporation; and PATIENT ACCOUNTING SERVICE CENTER, LLC dba ARSTRAT, a Washington Corporation, | Demand For Jury Trial |
| Defendants. | |

For her First Amended Complaint, Plaintiff alleges:

Page 1-FIRST AMENDED COMPLAINT

1.

This court has subject jurisdiction pursuant to 28 U.S.C. §1331, and 15 U.S.C. §1692k(d). Plaintiff requests this court exercise supplemental (pendant) jurisdiction over her related state law claims pursuant to 28 U.S.C. §1367.

2.

Plaintiff Rochelle Surber is a natural person who lives in Oregon.

3.

Defendant Cascade Radiologists, Ltd. ("CASCADE") is an Oregon corporation engaged in the business of providing medical services and also engages in consumer debt collections.

4.

Defendant CAC, Inc. ("CAC") is an Oregon corporation engaged in the business of collecting consumer debts.

5.

Defendants St. Francis of Baker City and St. Elizabeth Health Services, Inc. (collectively "ST. ELIZABETH") are Oregon non-profit corporations engaged in the business of providing medical services and also engages in consumer debt collections. Plaintiff is informed and believes that St. Francis of Baker City is the successor entity of St. Elizabeth Health Services and has assumed its debts and liabilities.

6.

Defendant CDI Affiliated Services, Inc. ("CDI") is an Idaho corporation engaged in the business of collecting consumer debts in the state of Oregon.

/ / /

7.

Defendant Providence Health & Services d.b.a. Providence St. Mary Medical Center ("ST. MARY") is a Washington non-profit corporation engaged in the business of providing medical services and also engages in collecting consumer debts.

8.

Defendant Patient Accounting Service Center, LLC dba ARSTRAT ("ARSTRAT") is a Washington Limited Liability Company engaged in the business of collecting consumer debts in the state of Oregon.

9.

On or about December 27, 2007, Plaintiff was injured at work and filed a workers' compensation claim. Plaintiff was represented by an attorney for all aspects of the claim including compensability of medical treatment.

10.

Plaintiff received medical services for her work related injury from defendants CASCADE, ST. ELIZABETH, and ST. MARY.

11.

As of the filing date of this action, the issues of compensability of Plaintiff's workers' compensation claim and the disputed services provided by Defendants has not been finally determined.

12.

On or about December 31, 2008, Defendant CASCADE sent an invoice for services to Plaintiff.

Page 3-FIRST AMENDED COMPLAINT

13.

Plaintiff notified Defendant CASCADE that the service billed in the December 31, 2008 invoice was disputed and there was no final determination regarding workers' compensation claim for which the care was provided.

14.

Plaintiff provided Defendant CASCADE with the name of her attorney and asked they only speak with him.

15.

Defendant CASCADE then engaged Defendant CAC to make further efforts to collect the debt.

16.

On or about March 26, 2009, Defendant CAC contacted Plaintiff to collect the amount claimed by Defendant CASCADE for workers' compensation related services.

17.

Contacted approximately March 30, 2009 and informed them this alleged debt was part of a workers' compensation claim and compensability had not been finally determined.

18.

On or about March 30, 2009, Plaintiff notified Defendant CAC that the amount they were trying to collect was the subject of an ongoing workers' compensation claim and requested they stop contacting her and contact her attorney instead.

/ / /

/ / /

19.

After plaintiff told Defendant CAC that the debt was part of an ongoing workers' compensation claim and asked them to contact her attorney, an agent of Defendant CAC said they would report this debt to the credit bureaus and it would affect her credit rating.

20.

Defendant CAC continued mailing notices to plaintiff, telephoning plaintiff and members of plaintiff's family to attempt to collect the alleged debt on behalf of Defendant CASCADE.

21.

In March, 2009, Defendant CAC reported Plaintiff's bill from Defendant CASCADE was past due to TransUnion.

22.

After learning the debt was a disputed service in an ongoing workers' compensation case, Defendant CAC made no effort to correct the misinformation they provided to TransUnion.

23.

Plaintiff was damaged when she applied for a student loan for her daughter and her application was denied on July 15, 2009 due the collection activities of the Defendants.

24.

On or about September 27, 2009 Plaintiff learned Defendant CAC had reported the Cascade debt to TransUnion, and that the debt was listed as an open "collection account" on her credit report.

/ / /

/ / /

Page 5-FIRST AMENDED COMPLAINT

25.

Sometime in 2009, Plaintiff was contacted by Defendant ST. MARY regarding medical expenditures she incurred in connection with her workers' compensation claim. Thereafter, Defendant ST. MARY engaged Defendant ARSTRAT to make further collection efforts.

26.

On or about December 2, 2009, Plaintiff received a bill from Defendant ARSTRAT attempting to collect on Plaintiff's workers' compensation related debt to Defendant ST. MARY.

27.

On or about January 11, 2010, Plaintiff received another bill from ARSTRAT attempting to collect on Plaintiff's workers' compensation related debt to Defendant ST. MARY.

28.

On or about January 25, 2010, Plaintiff notified Defendant ARSTRAT that the services billed in the invoices were disputed and there was no final determination regarding workers' compensation claim for which the care was provided.

29.

Sometime in 2009, Defendants ST. ELIZABETH also began collections efforts against Plaintiff in regards to medical services performed in relation to Plaintiff's workers' compensation claim.

30.

On or about April 6, 2009, Defendants ST. ELIZABETH sent an invoice for medical services performed in relation to Plaintiff's workers' compensation claim to Plaintiff claiming that Plaintiff was "severely delinquent" and that the debts were "scheduled to be sent to a

collection agency in 10 days." Thereafter, Defendants ST. ELIZABETH engaged Defendant CDI to make further collection efforts on its behalf.

31.

On or about July 7, 2009 Plaintiff received a collection notice from Defendant CDI attempting to collect the workers' compensation related debt to Defendants ST. ELIZABETH. Plaintiff is informed and believes that Defendant CDI was thereafter notified was that the service billed in the invoice for ST. ELIZABETH was disputed and there was no final determination regarding workers' compensation claim for which the care was provided.

32.

On or about August 24, 2009, Defendant CDI made another attempt to collect Plaintiff's workers' compensation related debt to Defendants ST. ELIZABETH, demanding that Plaintiff contact Defendant CDI "TODAY" to make payment arrangements.

33.

Defendants, and each of them, have continued their unfair debt collection efforts against Plaintiff even after being placed on notice that said debts were the subject of a pending Oregon workers' compensation claim. Defendants' unlawful debt collection efforts are continuing and Plaintiff reserves the right to amend this complaint accordingly.

34.

As a proximate result of Defendants unlawful conduct, Plaintiff has suffered and continues to suffer economic and noneconomic damages all to her detriment.

/ / /

/ / /

Page 7-FIRST AMENDED COMPLAINT

**FIRST CLAIM FOR RELIEF**
UNLAWFUL DEBT COLLECTION PRACTICES ACT
(ORS 646.639 et seq.)
(Against All Defendants)

35.

Plaintiff realleges paragraphs 1-34 as if fully set forth herein.

36.

Plaintiff is a "consumer" within the meaning of ORS 646.639(1)(a).

37.

Defendants are "debt collectors" within the meaning of ORS 646.639(1)(g).

38.

This civil action involves a "debt" within the meaning of ORS 646.639(1)(e).

39.

Defendants violated the Unlawful Debt Collection Practices Act, ORS 646.639 et seq., in the following ways:

1) Attempting to or threatening to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist, or threaten to take any action which the debt collector in the regular course of business does not take, in violation of ORS 646.639(2)(k);

2) Representing that an existing debt may be increased by the addition of attorney fees, investigation fees or any other fees or charges when such fees or charges may not legally be added to the existing debt, in violation of ORS 646.639(2)(m); and

3) Collecting or attempting to collect any interest or any other charges or fees in excess of the actual debt unless they are expressly authorized by the agreement creating the debt or expressly allowed by law, in violation of ORS 646.639(2)(n).

4)       Taking steps further steps to collect for disputed workers' compensation related medical services from Plaintiff prior to the issue of compensability being finally determined in violation of ORS 656.313(3).

40.

As a result of Defendants' violations of the Unlawful Debt Collection Practices Act, plaintiff was caused to suffer worry, fear, distress, frustration, embarrassment, and humiliation, all to her damages in an amount to be determined by the jury.

41.

As a result of defendants' violations of the Unlawful Debt Collection Practices Act, plaintiff requests punitive damages in an amount to be determined by the jury.

42.

Plaintiff is entitled to her attorney fees, pursuant to ORS 646.641(2).

### SECOND CLAIM FOR RELIEF
FAIR DEBT COLLECTION PRACTICES ACT
(15 U.S.C. § 1692 et seq.)
(Against All Defendants)

43.

Plaintiff realleges paragraphs 1-34 as if fully set forth herein.

44.

Plaintiff is "consumers" within the meaning of 15 U.S.C. § 1692a.

45.

Defendants are "debt collectors" within the meaning of 15 U.S.C. § 1692a.

46.

This civil action involves a "debt" within the meaning of 15 U.S.C. § 1692a.

47.

Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., in the following ways:

1)   Engaging in harassing and abusive communications, in violation of 15 U.S.C. § 1692d; and,

2)   Making false and misleading representations, in violation of 15 U.S.C. § 1692e.

48.

As a result of Defendants, violations of the Fair Debt Collection Practices Act, plaintiff was caused to suffer worry, fear, distress, frustration, embarrassment, and humiliation, all to her damages in an amount to be determined by the jury.

49.

Plaintiff is entitled to statutory damages of $1,000, each, pursuant to 15 U.S.C. § 1692k.

50.

Plaintiff is entitled to her attorney fees, pursuant to 15 U.S.C. § 1692k.

**THIRD CLAIM FOR RELIEF**
(Defamation- Libel)
(Against Defendants CASCADE and CAC)

51.

Plaintiff realleges paragraphs 1-34 as though fully restated herein.

52.

Defendant CAC's defamatory statement made during March, 2009 were malicious and in bad faith. The statement was made with knowledge that it was untrue or with reckless disregard for the statements truth or falsity, and with reckless disregard to the risk of injury to Plaintiff.

53.

The defamatory statement to TransUnion that Plaintiff had a debt that was past due was made within the course and scope of Defendant CAC's agency and/or duties with Defendant CASCADE, therefore Defendant CASCADE is equally liable to Plaintiff for the damages caused by said defamatory statement.

54.

Plaintiff also has reason to believe that various agents of Defendants CASCADE and CAC re-published the defamatory statements, but the facts and circumstances of those re-publications are as of yet unknown. Upon discovery said facts and circumstances will be added at a later time by way of amendment or conformed to proof at the time of trial.

55.

The defamatory statement by Defendant CAC in March 2009, constitutes libel, therefore general damages are presumed.

56.

Plaintiff has suffered general damages to her reputation, and emotional and mental suffering as a result of Defendant CAC's defamatory statements, damages are continuing and are to be determined at the time of trial.

57.

As a direct result of Defendant CAC's and Defendant Cascade's defamatory statements, damages being presumed, or in an amount to be determined by a jury at the time of trial, which is imputed to Defendant Cascade, for loss of reputation, Reduction of her credit worthiness, emotional and mental suffering.

/ / /

/ / /

Page 11-FIRST AMENDED COMPLAINT

## FOURTH CLAIM FOR RELIEF
INVASION OF PRIVACY
(Against All Defendants)

58.

Plaintiff incorporates paragraphs 1 - 34 as if fully set forth herein.

59.

Defendants' conduct intentionally intruded on plaintiff's solitude, seclusion and/or privacy. Defendants' conduct was highly offensive to plaintiff and would be highly offensive to a reasonable person. Defendants acted with malice or willful intent to injure plaintiff while willfully ignoring the law.

60.

Defendants' conduct caused plaintiff to suffer damages including invasion of her privacy, intrusion of her solitude and seclusion, emotional distress, frustration, mental anguish, and interference with her normal and usual activities.

## PRAYER

WHEREFORE, plaintiff prays for judgment against Defendants as follows:

1. On the First Claim for Relief:

    a. Economic and Noneconomic Damages,

    b. Punitive damages, and,

    c. Attorney fees, costs and disbursements.

2. On the Second Claim for Relief:

    a. Damages,

    b. Statutory damages, and,

  c. Attorney fees, costs and disbursements.

3. On the Third Claim for Relief:

  a. Economic and Noneconomic Damages,

  b. Costs and disbursements.

4. On the Fourth Claim for Relief:

  a. Economic and Noneconomic Damages, and,

  b. Costs and disbursements.

5. As to All Claims, any other relief that the Court deems just and equitable.

## JURY DEMAND

Plaintiff requests trial by jury on all issues and claims to the extent permitted by law.


DATED this 17th day of June, 2010.


        *s/ Matthew Lackey*
        MATTHEW LACKEY, OSB No. 06404
        Of Attorneys for Plaintiff